IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOHN RAMOS,

        Plaintiff,

vs.                                              CIVIL NO.  03-131 LH/LFG

U.S. POSTAL SERVICE, and
AMERICAN POSTAL WORKERS
UNION, AFL-CIO,

        Defendants.

## REPORT RECOMMENDING DENIAL
## OF MOTION TO ENFORCE SETTLEMENT[1]

THIS MATTER is before the Court on Plaintiff John Ramos' ("Ramos") Motion to Enforce Settlement [2]Agreement [Doc. 23]. An order of reference was issued by the trial judge requesting a recommended disposition [Doc. 25]. The Court considered the motion and response [Doc. 24]. Ramos failed to file any reply to the motion. Oral argument is not necessary. This matter may be resolved based on the parties' submissions.

Ramos contends that the parties engaged in settlement negotiations in an effort to resolve this case. On June 5, 2003, Michael Moses, Ramos' counsel, corresponded with defense counsel Michael Hoses and stated that Ramos was "due and owing back pay with interest" on the basis of an arbitration award.

---

[1] Within ten (10) days after a party is served with a copy of this analysis and recommended disposition, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such analysis and recommendation. A party must file any objections within the ten-day period allowed if that party wants to have appellate review of the analysis and recommendation. If no objections are filed by October 22, 2003, no appellate review will be allowed.

[2] The other conditions are not in dispute and need not be discussed here.

On June 23, 2003, attorney Hoses responded to the letter by offering to settle on the following basis: "The USPS agrees to pay Mr. Ramos back pay for the period November 27, 1998 to October 31, 2002, subject to normal withholdings."

Upon receipt of the June 23, 2003 letter, attorney Moses spoke with Mr. Hoses to request the dollar amount involved. And, on July 8, 2003, Mr. Hoses corresponded with Mr. Moses and stated, *inter alia*, "please be advised that the approximate gross figure for back pay is $129,121.79."

Subsequently, Ramos made a counteroffer and proposed settling his claim for $173,927.30 (Motion, Ex. 4). This figure purportedly included additional amounts for annual leave, sick leave, COLA increases, Sunday premium pay, night differential, holiday pay and interest. The counterproposal was not accepted and, instead, attorney Hoses left a telephonic message with Mr. Moses setting out proposed terms of settlement. Those terms were to pay Ramos the amount of his back pay less standard, normal withholdings. The actual dollar-for-dollar calculation had not been made, but the estimate for back pay was about $129,000. Thereafter, Ramos, through Mr. Moses, sent a letter to Mr. Hoses indicating that the matter has been settled for payment of $129,121.79. In addition, the United States was to pay accrued annual leave for approximately 480 hours. Upon receipt of that letter, Mr. Hoses and Mr. Moses again conferred to clarify the settlement amount; the terms of that discussion are memorialized in Mr. Moses' letter of July 15, 2003, which states in part:

> Based upon our conversation yesterday, the terms of settlement contained in my July 13, 2003 letter are those to be included in the release document. I hereby acknowledge that the $129,171.00 number is subject to the normal and routine deductions. As I told you, I understood that when I wrote the July 13th letter.

It is clear from the government's response that the approximate amount owed to Ramos was $129,121.79, less the "normal and routine" deductions. A review of work records shows that the actual amount of back pay owed Ramos was $127,681.66, rather than the approximate amount

2

previously discussed by the parties. In addition to the normal and routine deductions, the U.S. Postal Service withheld an additional $5,824 for unemployment compensation benefits paid by the State of New Mexico to Ramos for the period December 1998 through May 1999, and an additional $500 representing outside earnings by Ramos when he was off work. Defendant withheld amounts under Section 9 of its management instruction EL430-90-2. Under that provision, federal income tax, FICA or Medicare tax, whichever is applicable, retirement contributions, earnings from outside employment and unemployment compensation must be deducted.

The United States does not dispute its obligation to pay Ramos accrued annual leave, but only states that in the course of normal business events, it takes three to six pay periods to process back payment amounts. Those payments have since been made, and are no longer in dispute.

The Court concludes that the proposed settlement of $129,121.79, less normal and routine deductions, was clearly conveyed as an approximate amount, and the subsequent confirmation of pay actually owed was less than the estimate. The contemplation of the parties was that Ramos recover his actual back pay. Indeed, this is exactly what Ramos will receive by the settlement. Secondly, the deductions made from Ramos' check fall within standard deductions save for the $5,824 withheld to pay the New Mexico Labor Department and the $500 excess pay. However, Ramos was obligated to repay the State for amounts paid him, and the $500 was also required to be paid under the provisions of the arbiter's order.

The Magistrate finds that there was no breach of the agreement, and that all Ramos was entitled to was his actual back pay less normal deductions. The remaining issue concerns the amounts withheld for the Department of Labor, as well as the $500 for excess earnings.

Ramos does not contend that the amounts deducted were improper, but, rather, that they should not have been deducted by the United States, and, instead, paid to him and he would have had

3

the responsibility of complying with the repayment obligations.  The Court agrees that those deductions are not routine and ordinary deductions.  However Ramos' argument essentially falls into the no-harm-no-foul arena.  It is undisputed that Ramos owed this money the State of New Mexico.  The State of New Mexico is in effect a lienholder, and a direct payment ensures that the State will receive its due.  A direct payment to Ramos may result in delay or, in a worst case scenario, a denial of the State's right to reimbursement.  Ramos has suffered no harm as that money is being held in the court registry.  Ramos was required under the terms of the arbiter's decision to pay $500.

The Magistrate finds that the United States did not breach the terms of the settlement and recommends that the motion to enforce be denied.  The Magistrate further recommends that the parties prepare an appropriate order authorizing the Clerk of the Court to release the withheld funds to the proper recipient, including the New Mexico Department of Labor.  If Ramos is able to provide satisfactory releases from the State, then the funds in the court registry, upon issuance of an order approved by all parties, may be issued to Ramos.

                                                  _____
                                                  Lorenzo F. Garcia
                                                  Chief United States Magistrate Judge