

FILED
UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

05 FEB -9 PM 3:58

CLERK-ALBUQUERQUE

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW MEXICO

JOHN RAMOS,

    **Plaintiff,**

vs.                                                    CIV No. 03-0131 LH/LFG

JOHN POTTER, Postmaster General,
UNITED STATES POSTAL SERVICE,

    **and**

AMERICAN POSTAL WORKERS
UNION, AFL-CIO,

    **Defendants.**

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

    COMES NOW Defendant American Postal Workers Union AFL-CIO (APWU), by and though

its counsel of record, O'DONNELL, SCHWARTZ & ANDERSON, P.C. (Daniel B. Smith) and

YOUTZ & VALDEZ, P.C. (Shane C. Youtz), and files this Findings of Fact and Conclusions of Law.

## STATEMENT OF FACTS

### Background

1.    Plaintiff John Ramos is a resident of New Mexico.

2.    The American Postal Workers Union, AFL-CIO is a national union headquartered in

    Washington, DC. See APWU Exs. AY, AZ, BA, BB.

3.    Plaintiff was hired into the clerk craft by the United States Postal Service (Postal Service) on

    February 18, 1997. See APWU Ex. N.    Plaintiff was a Part Time Flexible (PTF) clerk.  As

    a PTF, Plaintiff had no set schedule and no guarantee of minimum hours.  Further, as a



67

PTF, Plaintiff was ineligible to use his seniority to bid into a "duty assignment" at a fixed facility. Instead, the Postal Service could assign him to perform any duties at any one of approximately thirty different Postal Service facilities in the Albuquerque area.

4.      Plaintiff was a member of the Albuquerque Local #380, American Postal Workers Union, AFL-CIO (Local 380). See Complaint at ¶¶ 5, 9, 12. [Docket No. 1.] Local 380 is an autonomous union and not a party to this action. Local 380 is a separate legal entity, distinct from the American Postal Workers Union, which is the Defendant in this action. See APWU Exs. AY, AZ, BA, BB, at Article 16, § 6(c).

5.       Plaintiff was covered by successive collective bargaining agreements. See APWU Exs. AT, AU, AV, AW. Article 15 of the successive collective bargaining agreements provides a grievance and arbitration procedure for resolving disputes. See APWU Exs. AT, AU, AV, AW, see also  See Complaint at ¶¶ 5, 9 [Docket No. 1].

6.      Under the grievance procedure, Plaintiff was entitled to file grievances at Step One on his own behalf. See APWU Exs. AT, AU, AV, AW at Art. 15.2.  Local 380 was also able to file Step One Grievances on Plaintiff's behalf. See Id.

7.      Local 380 investigates potential grievances, files grievances at Step One, processes grievances at Step Two, and appeals grievances to Step Three. See Declaration of Stephen J. Zamanakos at ¶ 2 (a copy of the declaration can be found at Exhibit B to Docket No. 50). At those stages of the grievance procedure, Local 380 has exclusive control of how the grievance is handled. See Id. The APWU is not involved in, and nor does the APWU control or supervise, Local 380's decisions to file a grievance, its handling of grievances at Steps One and Two, or its decision to appeal grievances to Step Three. See id.

8.      The APWU handles grievances at Step Three and arbitration.

### APWU's Successful Arbitration of Plaintiff's Termination Grievance

9.      The Postal Service terminated the Plaintiff effective November 27, 1998, for workers

compensation fraud.  See Complaint at ¶ 8 [Docket No. 1]; APWU Ex. M at p. 3, ¶ 1.

10.     Local 380 investigated the termination, see APWU Exs. C, D, E, I, and K, and challenged

the termination from at Step One of the grievance procedure through the appeal to Step

Three, see APWU Exs. G, J, L, M, N, O, P, R, see Complaint at ¶ 9 [Docket No. 1].

11.     Once Local 380 appealed the termination grievance to Step 3, National Business Agent

Steve Zamanakos handled the grievance.  Mr. Zamanakos is an elected officer of the

APWU.  He has never been a member or officer of Local 380.

12.     The APWU met with the Postal Service at Step Three on April 28, 1999, see APWU Ex. S,

and appealed the decision to arbitration on June 21, 1999, see Complaint at ¶ 9 [Docket No.

1]; APWU Ex. U.

13.     The grievance was heard before an arbitrator on February 1, 2001, and May 21 and 22, 2001.

See Complaint at ¶ 10 [Docket No. 1]; Plaintiff Ex. 2.  Mr. Zamanakos filed a 17-page post-

hearing brief, see APWU Ex. U, and filed objections to the Postal Service's brief, see APWU

Ex. W.  Mr. Zamanakos argued the termination was procedurally improper and wrong on

the merits.  See APWU Ex. U.

14.     The arbitrator issued a decision on July 24, 2001, finding for the APWU on procedural

grounds, and ordering the Postal Service to return Plaintiff to work and to make him whole

for wages and other benefits.  See Complaint at ¶ 11 [Docket No. 1]; Plaintiff Ex. 2 at p. 1.

15.    On August 1, 2001, Mr. Zamanakos mailed letters dated August 1, 2001, to Plaintiff and the

       President of Local 380 informing them of the favorable outcome and remedy.  See

       Complaint at ¶ 12 [Docket No. 1]; Plaintiff Ex. 2 at p. 1.

16.    The Postal Service did not immediately comply with the arbitration award.  In a letter to

       Plaintiff dated August 21, 2001, the Postal Service stated that it was "in the process of

       attempting" to vacate the award.  See Complaint at ¶ 14 [Docket No. 1]; Plaintiff Ex. 7.  The

       Postal Service did not notify the APWU of its intent to vacate the award.

17.    The Postal Service filed a Complaint seeking to vacate the award in the United States

       District Court for the District of New Mexico in Case No. Civ-01-1222M on October 25,

       2001.  See Plaintiff Ex. 3.  Although the Postal Service filed its complaint on October 25,

       2001, it did not serve the APWU, or otherwise make the APWU aware of the complaint,

       until February 21, 2002.  See APWU Ex. X.

18.    The APWU answered the complaint and counterclaimed for enforcement of the arbitration

       award on March 13, 2002.  See Plaintiff Ex. 4.  The Postal Service answered the APWU's

       counterclaim on May 21, 2002, see APWU Ex. Y, and the court ordered a settlement

       conference for July 30, 2002, see APWU Ex. Z.

19.    During the time between when the arbitrator issued his award and the July 30, 2002,

       settlement conference, Plaintiff and Mr. Zamanakos spoke monthly by telephone.  Plaintiff

       was kept updated on the status of the suit through these telephone conversations.

       Additionally, Mr. Zamanakos referred Plaintiff to the APWU's counsel.  Plaintiff had two

       conversations with APWU's counsel during this period concerning the status of the suit.

20.     At the settlement conference on July 30, 2002, the Postal Service agreed in principle to

comply with the arbitration award, but the parties did not reach a final settlement agreement.

As per the discussions of the parties, the Postal Service was supposed to prepare a draft

settlement agreement. See APWU Ex. AA.

21.     Mr. Zamanakos called Plaintiff shortly after the July 30, 2002, settlement conference.  Mr.

Zamanakos told Plaintiff that the parties had reached a settlement agreement in principle,

and that he would call Plaintiff when it was finalized.

22.     Plaintiff called Mr. Zamanakos at the end of September or the beginning of October in 2002

concerning whether the settlement agreement had been reached.  Mr. Zamanakos responded

that he would contact the APWU's counsel, and contact Plaintiff back when he knew

something.

23.     The APWU and the Postal Service entered into a settlement agreement on October 4, 2002.

The settlement agreement required the Postal Service to comply fully with the arbitrator's

award.  Mr. Zamanakos received a copy of the settlement agreement on October 15, 2002.

See Plaintiff Ex. 5.

24.     Mr. Zamanakos called Plaintiff shortly after October 15, 2002, to inform him of the October

4, 2002, settlement agreement.  Mr. Zamanakos told Plaintiff that he would be called by the

Postal Service shortly to be returned to duty.  Mr. Zamanakos sent the Plaintiff a copy of the

October 4, 2002, settlement agreement by facsimile copy.

**Plaintiff's Reinstatement**

-4-

25.   The Postal Service called Plaintiff on October 30, 2002, and told him to report to work on October 31, 2002, at the Albuquerque Processing and Distribution Center (P&DC).   See Complaint at ¶ 17.   [Docket No. 1.]

26.   On October 31, 2002, Plaintiff reported to work at the Albuquerque P&DC.   Although the Plaintiff was a PTF when he was terminated, he was returned with a promotion to "unassigned regular" status.   Plaintiff received the promotion because he would have been promoted in the intervening years if he had not been terminated.   As a regular employee, Plaintiff had a guaranteed forty hours of work per week and a set schedule.   Plaintiff was an unassigned regular because he did not have a duty assignment.   As a PTF, Plaintiff was ineligible to bid on duty assignments and, therefore, there was no duty assignment to return him to.   Upon reinstatement, Plaintiff became eligible to use his seniority to bid on duty assignments.

27.   The Employee Labor Relations Manual (ELM), which governs employment matters at the Postal Service, requires all employees who are returning from an absence of 21 days or more due to illness or injury to provide medical documentation of their ability to return to work. See APWU Ex. BE at § 865.1.   Plaintiff was required to provide the such medical clearance because he had been out more than 21 days and went out of work on a back injury that led to his termination for workers compensation fraud.

28.   Upon reporting to work on October 31, 2002, Plaintiff's supervisor asked Plaintiff for medical clearance certifying that he had recovered from his back injury.   Plaintiff did not have the medical clearance.   Plaintiff also reported to that he could not work around machinery because of the a history of seizures, and that he could not work around dust

because of a pulmonary condition. Both the seizures and pulmonary conditions were new medical conditions that Plaintiff did not have in 1998. The supervisor was unwilling to allow Plaintiff to work until Plaintiff provided medical documentation delineating his medical restrictions. Plaintiff went off on paid leave.

29.    Sometime between October 31, 2002, and November 13, 2002, Plaintiff called Gene Gabaldon, the President of Local 380. Plaintiff complained that he had not been properly returned to work. After listening to the facts, Mr. Gabaldon explained to Plaintiff that he had, in fact, been reinstated, and that Plaintiff's request for a light-duty job to accommodate his new medical restrictions was a new matter. Mr. Gabaldon advised Plaintiff to provide the Postal Service the medical documentation delineating his restrictions that his supervisor requested. Mr. Gabaldon also told Plaintiff to fill out a light-duty request form and to bring it to him so that they could start trying to get light-duty work for Plaintiff. Light-duty request forms have a signature line for the "Union Representative" that reviewed the request. See Plaintiff Ex. 13.

30.    Plaintiff also called Mr. Zamanakos shortly after October 31, 2002. Plaintiff told Mr. Zamanakos that the Postal Service had refused to reinstate him. Mr. Zamanakos called Mr. Gabaldon who informed Mr. Zamanakos that Plaintiff had in fact been reinstated but that he was on paid leave until he provided medical documentation concerning his new medical conditions.

31.    Shortly after speaking with Mr. Gabaldon, Mr. Zamanakos called Plaintiff and told Plaintiff that he had been reinstated, and that finding light-duty work to accommodate the new medical restrictions was a new matter that Local 380 dealt with.

32.     Plaintiff did not ask Mr. Zamanakos to do anything with regards to finding him light duty
        work.

33.     Plaintiff never contacted Mr. Zamanakos or anyone else from the APWU after the two
        conversations that Mr. Zamanakos and Plaintiff had shortly after October 31, 2002.

34.     Plaintiff submitted a light duty request form on November 13, 2002, to the Postal Service.
        The request states that Plaintiff "should not work with machines," "must avoid duty
        environment," "restricted in lifting his R arm above shoulder level," and should "avoid
        prolonged standing, repetitive bending." See Plaintiff Ex. 13.

35.     Plaintiff never had Mr. Gabaldon review and sign his light-duty request form as is required
        by the form. See Plaintiff Ex. 13.

36.     Under Article 13 of the collective bargaining agreement, employees may request light-duty
        work if they have illnesses or injuries that are not work related by prevent them from
        performing their regular duties. Upon providing the proper medical documentation, the
        Postal Service is to search for appropriate light duty work. If there is an open position that
        fits an employee's medical restrictions, the Postal Service must give the employee the
        position. See id. If the Postal Service cannot find an open position that fits the employee's
        medical restrictions, the employee has no entitlement to light-duty work.

37.     In response to his request for light duty, the Postal Service, in a letter dated November 24,
        2002, requested more specific information concerning the severity of his seizures. See
        Plaintiff Ex. 16.

38.  On December 4, 2002, the Postal Service Labor Relations Specialist Karen Wheeler directed Plaintiff to meet with her on December 11, 2002, so she could receive "input about what type of work [Plaintiff] may be able to perform." See APWU Ex. AD.

39.  At the request of Plaintiff, Mr. Gabaldon, President of Local 380 attended the December 11, 2002, meeting with Plaintiff, Ms. Wheeler, and Postal Service Labor Relations Specialist Jerry Garcia.  Immediately prior to the meeting, Mr. Gabaldon advised Plaintiff that if he had a tape recorder in his bag that he should not secretly record the meeting.  Mr. Gabaldon had attended another meeting where Plaintiff attempted to tape record the proceedings, see APWU Ex. A, p. 6, ¶ 30, and he was aware that Plaintiff had attempted to tape record another meeting with management.  Taping employees without consent is a violation of ELM Section 668.29, and may be grounds for termination.  See APWU Ex. BD at § 668.29. Mr. Gabaldon was not hostile to Plaintiff.  Plaintiff erupted at Mr. Gabaldon and refused to attend the meeting.  Consequently, the Postal Service did not obtain any input as to the type of work that Plaintiff thought he could perform.

40.  On December 12, 2002, Plaintiff contacted Mr. Garcia and told him that he wanted to meet with the Postal Service.  He specifically rejected any representation by Local 380 or the APWU.  In response, the Postal Service arranged a meeting for December 18, 2002, to discuss the types of work the Plaintiff thought he could perform.  On December 18, 2002, the Plaintiff met with Ms. Wheeler and described the type of work he thought he could perform.

41.  After the December 18, 2002, meeting, the Postal Service conducted a search for work within the Plaintiff's no-machines, no-dust, no-bending, no-lifting, no-standing restrictions.

42.   On or about December 21-24, 2002, Plaintiff contacted Mr. Gabaldon.  Mr. Gabaldon had

not seen any of the medical documentation that Plaintiff provided to the Postal Service or

the light-duty request form that Plaintiff failed to have reviewed by Local 380.  Mr.

Gabaldon requested that Plaintiff provide him with a copy of the request and all other

paperwork Plaintiff had provided the Postal Service so that Mr. Gabaldon could investigate

and build a grievance.  Plaintiff agreed to provide Mr. Gabaldon with the paperwork.  Mr.

Gabaldon told Plaintiff that he would file a grievance over the Postal Service's failure to find

him light-duty work.

43.   Mr. Gabaldon filed a Step One grievance on January 6, 2003, over the Postal Service's failure

to provide Plaintiff with light-duty work.  The Postal Service denied the grievance on

February 4, 2003.  See APWU Ex. AK.

44.   By February 4, 2003, Plaintiff still had not provided Mr. Gabaldon with any of the

documents that he had turned into the Postal Service.  Mr. Gabaldon submitted a request to

the Postal Service for all medical documents that Plaintiff had provided to the Postal Service

up to that point, see APWU Ex. AF, because the documents were necessary to pursue the

grievance and Plaintiff failed to provide them.

45.   Ms. Wheeler set up a meeting for February 10, 2003, concerning Plaintiff's light duty

request.  See Plaintiff Ex. 27.  The meeting was called to further discuss the request.

Additionally, the Postal Service wanted to provide Plaintiff with a respirator it had purchased

to pass on to his doctor for an opinion on whether it would allow Plaintiff to safely work in

a dusty environment.

46.     Plaintiff refused to attend the February 10, 2003, meeting because the Postal Service would

        not allow him to bring his attorney. See APWU Ex. AH. The Postal Service told Plaintiff

        that he could have "union representation" at the meeting, see Plaintiff Ex. 28, but he refused

        to contact either Local 380 or the APWU, see APWU Ex. AG. Plaintiff never contacted

        either Local 380 or the APWU, and neither union was aware of the meeting.

47.     After the Plaintiff failed to report to the February 10, 2003, meeting, the Postal Service

        directed Plaintiff to attend a fact-finding meeting on February 18, 2003, concerning his

        failure to attend the earlier meeting. See APWU Ex. 29. The Postal Service told Plaintiff

        that he could bring "union representation." Plaintiff never contacted either Local 380 or the

        APWU, and neither union was aware of the meeting.

48.     Plaintiff refused to attend the February 18, 2003, fact-finding meeting. See Ex. APWU AI.

        As a result, Plaintiff was terminated for insubordination. See Plaintiff Ex. 33. Although his

        Notice of Proposed Removal notified him that he had fourteen days in which to file a

        grievance challenging his termination, see id. he did not make Local 380 aware of the

        termination action until well after fourteen days, see APWU Ex. AO. After promising to

        meet with Local 380 Vice President Jeff Padilla at the Local 380 union hall, Plaintiff refused

        to attend the meeting. Id. Mr. Padilla filed a grievance at Step One, id., which was denied

        because it was untimely.

49.     Although Plaintiff had renounced any representation by the APWU and Local 380, Mr.

        Gabaldon appealed the light-duty work grievance to Step Two on February 21, 2003.

        See APWU Ex. AK. The Postal Service denied the Step Two grievance because: (1) the

        Postal Service had fulfilled its contractual obligations by looking for light-duty work, even

though the search was unsuccessful, and (2) any inadequacies in the search for light-duty

work were caused by Plaintiff's failure to attend the February 10, 2003, meeting that was

called to discuss his medical conditions. See APWU Ex. AL. Local 380 appealed the

grievance to Step Three on April 8, 2003. See APWU Ex. AM.

50.   Plaintiff entered into a settlement agreement with the Postal Service on July 21, 2003, in this

action. See APWU Ex. AP. As part of the agreement, Plaintiff resigned from the Postal

Service on July 21, 2003, see id. at ¶ 5, and the Postal Service agreed to pay him "back pay

for the period November 27, 1998 [the date of Plaintiff's first termination] through October

31, 2002 [the date Plaintiff returned to work following the arbitration and subsequent

litigation]," see id. at ¶ 2. Plaintiff also agreed to dismiss with prejudice his claims against the

Postal Service in this lawsuit, to dismiss all grievances currently pending against the Postal

Service (including, presumably, the grievance protesting the Postal Service's failure to

provide him light-duty work), and to "release the USPS from any other claims for front pay,

back pay, other than those [described elsewhere], compensatory damages, punitive damages,

interest and/or attorney's fees." Id. ¶ 3.

51.   Both Plaintiff and Plaintiff's counsel signed the settlement agreement.

52.   Plaintiff did not consult with the APWU or Local 380 about his settlement or notify either

of them after he entered into the agreement.

53.   Plaintiff was aware that there was a pending grievance when he signed the settlement

agreement on July 21, 2003. Gene Gabaldon had told Plaintiff that he was going to file a

grievance over the Postal Service's refusal to provide light-duty work. Additionally, the

-11-

Postal Service, in its Answer filed on April 1, 2003, and served on Plaintiff's counsel, stated

that there was a pending grievance involving the Plaintiff.  Answer, ¶ 67. [Docket No. 10.]

54.    Mr. Zamanakos met with Postal Service at Step Three on April 13, 2004, where the

grievance was denied, see APWU Ex. AR.  The grievance was appealed by Mr. Zamanakos

on May 5, 2004, and it is currently pending arbitration.  See APWU Ex. AS.

55.    Plaintiff never filed a Step One grievance concerning his request for light-duty work.


### Plaintiff's Failure to Fill Out His Paperwork for His Back Pay

56.    The Plaintiff, upon being returned to work on October 31, 2002, was entitled to lost wages

and other benefits minus interim earnings.  See Complaint at ¶ 11 [Docket No. 1]; Plaintiff

Ex. 2 at p. 1.  Under the ELM and arbitral precedents, an employee who is terminated in

violation of a collective bargaining agreement has a duty to mitigate the damages of the

employer by seeking interim employment.  See APWU Ex. BE at § 436.2(b).  Before the

Postal Service will pay an employee who has been out of work for more than six months, the

employee is required to fill out paperwork showing any interim income, id. at § 436.42(b)(1),

and showing efforts he or she took to secure other employment, id. at § 436.42(e)(6).

57.    Sometime shortly after returning to work on October 31, 2002, Mr. Garcia delivered to

Plaintiff a letter dated November 4, 2002, that contained the forms to be filled out.

See APWU Ex. AC.

58.    Sometime relatively shortly after October 31, 2002, Plaintiff spoke with Mr. Gabaldon

regarding filling out his back pay forms.  Plaintiff stated that he had problems with two

portions.  The first portion was salary progression information.  Mr. Gabaldon told him that

the salary progression information would be filled out by Postal Service management. The second portion that Plaintiff had problems with was reporting his efforts to find interim employment. Mr. Gabaldon said that he could not help Plaintiff fill out that portion of the paperwork because he did not know where Plaintiff looked for work. Plaintiff did not ask Local 380 to do anything with regards to his back pay. Plaintiff had no other contact with Local 380 concerning Plaintiff's back pay.

59.     Plaintiff never made any contact with the APWU concerning his back pay.

60.     For reasons unknown to the APWU, Plaintiff took over four months to fill out his back pay forms and was still unable to do so completely. See Plaintiff Ex. 32. In an affidavit attached to his Employee Statement to Recover Back Pay, Plaintiff declared that he had $14,900 in interim earnings between November 27, 1998 and October 31, 2002.

61.     Plaintiff did not file a Step One grievance on his own behalf concerning any alleged failure of the Postal Service to pay him his back pay. Plaintiff did not ask Local 380 or the APWU to file a grievance on his behalf concerning any alleged failure of the Postal Service to pay him his back pay. Instead, he decided to rely on his attorney.

## CONCLUSIONS OF LAW

62.     In order to prevail the Plaintiff was required to demonstrate: (1) a breach of contract by the Postal Service in violation of 1208(b) of the Postal Reorganization Act,[1] and (2) a breach of

---

[1]While postal unions are covered by 39 U.S.C. §1208(b) (2005), instead of the provision covering private sector employees, Section 301, 29 U.S.C. §185(a), the same principles apply in postal cases

the APWU's duty of fair representation to Plaintiff. DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 164 (1983); Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 570-571 (1976); Webb v. ABF Freight System, Inc. 155 F.3d 1230, 1238-1239 (10th Cir. 1998). A union breaches its duty of fair representation only if its conduct is arbitrary, discriminatory, in bad faith or perfunctory. Air Line Pilots Ass'n v. O'Neill, 499 U.S. 65, 67 (1991); Vaca v. Sipes, 386 U.S. 171, 191 (1967); Webb, 155 F.3d at 1239.

63.     The APWU vigorously represented Plaintiff in his 1998 termination case. After Local 380 challenged his termination in the collectively bargained grievance and arbitration procedure at Step One through the appeal to Step Three, the APWU handled the grievance at Step Three, appealed it to arbitration, and convinced an arbitrator to return him to work and make him whole for lost wages and benefits. Upon the Postal Service's refusal to comply with the award and its suit to vacate, the APWU timely answered and counterclaimed for enforcement of the award. Ultimately, the APWU negotiated a settlement on October 4, 2002, whereby the Postal Service agreed to fully implement the award. On October 31, 2002, Plaintiff was reinstated. Plaintiff was kept fully informed of the status of his grievance and the subsequent suit to vacate the arbitration award. The conduct of the APWU, and Local 380, was not arbitrary, discriminatory, in bad faith or perfunctory. Therefore, the

Bacashihua v. USPS, 859 F.2d 402, 405 (6th Cir. 1988) ("Section 301 law is therefore consistently applied to actions brought under 39 U.S.C. §1208(b)."); APWU v. USPS, 823 F.2d 466, 469 (11th Cir. 1987); Johnson v. United States Postal Service, 756 F.2d 1461, 1465 (9th Cir. 1985) ("Because [39 U.S.C. Section 1208] is essentially identical to Section 301 of the National Labor Relations Act, Bowen v. United States Postal Service, 459 U.S. 212 232 n.1 (1983), we may properly rely on Section 301 cases for guidance."); Corbin v. Runyon, 188 F.3d 518 (table); 1999 WL 590749, *4 (10th Cir. 1999).

Plaintiff has failed to demonstrated a breach of the duty of fair representation regarding his termination case. Air Line Pilots Ass'n, 499 U.S. at 67; Vaca, 386 U.S. at 191; Webb, 155 F.3d at 1239.

64.     The APWU vigorously represented the Plaintiff in his claim for light-duty work. Local 380 challenged the Postal Service's failure to provide Plaintiff with light-duty work in the collectively bargained grievance and arbitration procedure at Step One through the appeal to Step Three. The APWU handled the grievance at Step Three, and timely appealed it to arbitration notwithstanding Plaintiff's renunciation of union representation during the pendency of the grievance and the Plaintiff's complete failure to cooperate with either Local 380 or the APWU to develop and pursue his grievance. The conduct of the APWU, and Local 380, was not arbitrary, discriminatory, in bad faith or perfunctory. Therefore, the Plaintiff has failed to demonstrated a breach of the duty of fair representation regarding his claim for light-duty work. Air Line Pilots Ass'n, 499 U.S. at 67; Vaca, 386 U.S. at 171; Webb, 155 F.3d at 1239.

65.     Plaintiff did not afford Local 380 or the APWU the opportunity to act on his behalf regarding his claim for light-duty work. Plaintiff renounced any "union representation" when dealing with Postal Service management, refused to cooperate with Local 380 in developing and pursuing a grievance case, refused to cooperate with the APWU in developing a strategy to arbitrate the grievance notwithstanding Plaintiff's apparent waiver of the grievance in the July 21, 2003, settlement agreement, and affirmatively elected to be represented by counsel Michael Mozes instead of either Local 380 or the APWU. "[T]here can be no doubt that the employee must afford the union the opportunity to act on his

behalf," Republic Steel v. Maddox, 379 U.S. 650, 652-653 (1965), the Plaintiff failed to do so and, therefore, Plaintiff has failed to demonstrate a breach of the duty of fair representation regarding his claim for light-duty work.

66.     Local 380 properly responded to the only inquiry that Plaintiff had with either Local 380 or the APWU concerning receiving his back pay due under the arbitration award. Both Local 380 and the APWU were ready, willing and able to assist him in dealing with management if the need arose. Neither Local 380 nor the APWU had an affirmative duty to monitor or shepherd Plaintiff through the completion of the routine, uncomplicated process of filling out back pay paperwork. Air Line Pilots Ass'n, 499 U.S. at 67; Vaca, 386 U.S. at 191; Webb, 155 F.3d at 1239. The conduct of the APWU, and Local 380, was not arbitrary, discriminatory, in bad faith or perfunctory. Therefore, the Plaintiff has failed to demonstrated a breach of the duty of fair representation regarding his claim that the APWU failed to assist him in filling out his back pay paper work. Air Line Pilots Ass'n, 499 U.S. at 67; Vaca, 386 U.S. at 191; Webb, 155 F.3d at 1239.

67.     Plaintiff did not afford Local 380 or the APWU the opportunity to act on his behalf regarding assisting him in filling out his back pay paperwork. Plaintiff renounced any "union representation" when dealing with Postal Service management, failed to request that either union do anything on his behalf regarding filling out his back pay forms, and affirmatively elected to be represented by counsel Michael Mozes instead of either Local 380 or the APWU. The Plaintiff failed to afford the APWU and Local 380 the opportunity to act on his behalf regarding his back pay, therefore, the Plaintiff's claim regarding the APWU's

failure to adequately assist him in receiving his back pay fails.  Republic Steel, 379 U.S. at 652-653.

68.    Plaintiff failed to demonstrate that the Postal Service violated the collective bargaining agreement by placing him at the AMF on October 31, 2002.  Prior to being terminated, Plaintiff was a PTF and did not have a duty assignment that entitled him to work at the AMF.  He failed to prove that he was entitled to a limited-duty position at the AMF by virtue of a workers compensation claim, or that he had been the senior employee to bid on an AMF duty assignment.  In absence of a breach of contract by the Postal Service, the Plaintiff's claim that the APWU breached its duty of fair representation regarding not being returned to the AMF fails.  DelCostello, 462 U.S. at 164; Hines, 424 U.S. at 570-571; Webb, 155 F.3d at 1238-1239.

69.    Plaintiff failed to demonstrate that the Postal Service violated Article 13 of the collective bargaining agreement by not finding him light-duty work.  The Postal Service searched for work within his severe restrictions and was unable to find any suitable open positions.  Article 13 did not require the Postal Service to do anything more.  Further, to the extent that the Postal Service failed to find light-duty work, it did not violate Article 13 because Plaintiff's refusal to participate in the accommodation process prevented the Postal Service from engaging in as complete a search for light-duty work as it intended to do.  In absence of a breach of contract by the Postal Service, the Plaintiff's claim that the APWU breached its duty of fair representation regarding his light-duty work request fails.  DelCostello, 462 U.S. at 164; Hines, 424 U.S. at 570-571; Webb, 155 F.3d at 1238-1239.

70.   Plaintiff failed to demonstrate that the Postal Service violated the collective bargaining agreement by not providing him with back pay. Plaintiff failed to fully complete the Postal Service's back pay forms in accordance with Section 436 of the ELM. Plaintiff did not prove that Section 436 of the ELM exceeded the Postal Service's right to establish reasonable work rules under Article 19 of the collective bargaining agreement. In the absence of a breach of contract by the Postal Service, the Plaintiff's claim that the APWU breached its duty of fair representation regarding assisting him in getting his back pay fails. DelCostello, 462 U.S. at 164; Hines, 424 U.S. at 570-571; Webb, 155 F.3d at 1238-1239.

71.   The Plaintiff was required to fully exhaust his contractual remedies concerning his request for light-duty work before bringing suit against the APWU. Lucas v. Mountain States Telephone and Telegraph, 909 F.2d 419, 421 (10th Cir. 1990); Arnold v. Air Midwest, Inc., 100 F.3d 857, 860 fn. 3 (10th Cir. 1996). There is currently a grievance pending arbitration concerning his light-duty request and, therefore, his claim against the APWU for failing to represent him fairly with respect to his light-duty request has not yet accrued. Lucas, 909 F.2d at 421; Arnold, 100 F.3d at 860 fn. 3.

72.   The Plaintiff was required to fully exhaust his contractual remedies concerning his dispute over receiving his back pay pursuant to the arbitration award. Lucas, 909 F.2d at 421; Arnold, 100 F.3d at 860 fn. 3. Plaintiff failed to exhaust his contractual remedies by either filing a grievance at Step One on his own behalf or by asking either the APWU or Local 380 to file a grievance for him. Therefore, his claim against the APWU for failing to assist him in getting his back pay has not yet accrued. Lucas, 909 F.2d at 421; Arnold, 100 F.3d at 860 fn. 3.

73.     The duty of fair representation in the grievance and arbitration procedure stems from a

union being the exclusive representative for the bargaining unit members in that grievance

and arbitration procedure. <u>Vaca v. Sipes</u>, 386 U.S. 171, 176-177(1967).  It was a judicially

developed as a necessary corollary to the status of exclusive representation provided for by

Section 9(a) of the National Labor Relations Act ("The NLRA"), 29 U.S.C. Section 159(a).

The NLRA's mandate that the majority representative be the "exclusive representative of all

the employees" in the bargaining unit forms the basis upon which the federal common law

of fair representation evolved.  <u>See</u> 2 <u>The Developing Labor Law</u> 1409 (Patrick Hardin, et al.

eds., 3d ed. 1992).  Neither Local 380 nor the APWU were Plaintiff's exclusive

representative at Step One of the grievance procedure.  Article 15.2 of the pertinent

collective bargaining agreements allow effected employees to file grievances at Step One of

the grievance procedure.  Plaintiff was free to file Step One grievances on his own behalf

concerning his back pay award but he failed to do so.  Thus, any claim against the APWU

for the failure of the APWU or Local 380 to file a grievance concerning his back pay at Step

One must fail.

74.     The APWU is not liable for actions by its autonomous affiliate Local 380.  <u>United Mine</u>

<u>Workers v. Coronado Coal, Co.</u>, 259 U.S. 344, 395 (1922).  Local 380 is not an agent for the

APWU.  It acts completely within its own discretion at Step One and Step Two grievances,

and in the decision to appeal a grievance to Step Three.  The APWU was not involved in

Local 380's decision not to file a grievance at Step One concerning the delay Plaintiff faced

in getting his back pay.   The APWU was not involved in Local 380's handling of the light

duty request grievance at Step One, Step Two or the appeal to Step Three.  The APWU did

not authorize, ratify, encourage, or participate in the actions of Local 380 in those

circumstances, and therefore, is not liable for any misconduct.  Carbon Fuel Co. v. United

Mine Workers, 444 U.S. 212 (1979); Anielino v. The New York Times Co., 200 F.3d 73 (3rd

Cir. 2000).

75.     The APWU is not liable for any damages suffered by the Plaintiff prior to his reinstatement

on October 31, 2002.  The Plaintiff entered into a settlement agreement with the Postal

Service on July 21, 2003, that fully compensated him for all damages through October 31,

2002.  Any claim for interest on that amount was waived by Plaintiff in that settlement

agreement.

76.     The APWU cannot be held liable for any breach of the duty of fair representation

concerning Plaintiff's light-duty request because Plaintiff prevented the APWU from

pursuing that grievance by knowingly waiving the grievance in the July 21, 2003, settlement

agreement.  Republic Steel, 379 U.S. at 652-653.

77.     Plaintiff is not entitled to attorneys fees.  Plaintiff was only entitled to attorney's fees

incurred in pursuing his breach of contract claim against the Postal Service.  Lampkin v. Int'l

Union, United Automobile, Aerospace and Agricultural Implement Workers of America,

154 F.3d 1136, 1140-1141 (10th Cir. 1998).  Plaintiff made no offer of proof on the

attorneys fees he incurred in pursuing his claims against the Postal Service, and, therefore, is

not entitled to attorney's fees.

Dated: February 9, 2004.                         Respectfully submitted,

                                                 O'DONNELL, SCHWARTZ &
                                                 ANDERSON, P.C.

                                                 -20-

_____

Daniel B. Smith
1300 L Street, Suite 1200
Washington, DC  20005

**YOUTZ & VALDEZ, P.C.**

_____

Shane Youtz
Stephen Curtice
420 Central Ave. SW, Suite 210
Albuquerque, NM  87102
(505) 244-1200, fax—(505) 244-9700

*Attorneys for United Postal Workers Union, AFL-CIO*

I hereby certify that I have this
9th day of February, 2005, mailed a
copy of the foregoing pleading to
the following address:

Michael E. Mozes
5732 Osuna Road NE
Albuquerque, NM  87109-2527

_____

Shane Youtz