IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

FILED

JOHN RAMOS,

      Plaintiff

vs.

                                 No. CIV-03-~~1031~~ LH/LFG
                                    131

JOHN POTTER, Postmaster General,
UNITED STATES POSTAL SERVICE,

and

AMERICAN POSTAL WORKERS' UNION, AFL-CIO,

      Defendants.

05 MAY 10 AM 9: 15

CLERK ALBUQUERQUE

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiff John Ramos filed this interpleader action to determine the liability of the Defendant American Postal Workers' Union, AFL-CIO ("APWU") for its alleged breach of fair representation and breach of the collective bargaining agreement pursuant to the Labor Management Relations Act ("LMRA").[1] The Defendant American Postal Workers' Union claims there was no breach of contract or fair representation.[2]

The case was tried to the Court on February 7 and 8, 2005. The case is now fully briefed, and the Court makes the following findings of fact and conclusions of law.

---

[1] The LMRA is codified at 29 U.S.C. section 185(a).

[2] On July 21, 2003, the Plaintiff settled with the Defendant John Potter, Postmaster General, and all claims against him were thereby dismissed.

1

## FINDINGS OF FACT

Plaintiff is a resident of the State of New Mexico. Defendant APWU is a national labor organization headquartered in Washington, D.C.

Plaintiff was employed by the United States Postal Service ("Postal Service") as a Part Time Flexible ("PTF") clerk on February 18, 1997. A PTF has no regular schedule and is not guaranteed a specific amount of hours. As a PTF, the Postal Service could assign him to perform any duties at any one of the approximately thirty different Postal Service facilities located throughout the Albuquerque area.

At all times relevant to these findings, Plaintiff was a member of the Albuquerque Local #380, American Postal Workers' Union, AFL-CIO ("Local 380"), covered by a collective bargaining agreement. This collective bargaining agreement provides a four-step grievance and arbitration procedure for resolving disputes. The procedure provides that the worker is entitled to file the first grievance ("Step One") on his own behalf. The grievance is then investigated by the local union which, if necessary, files and processes the grievance to Step Two, and then can handle the appeal at Step Three. At Step Three, APWU assumes responsibility for the grievance and may, if required, file for arbitration,

2

Step Four of the process.

Plaintiff was terminated from the Postal Service on November 27, 1998 for filing fraudulent workers' compensation claims. In accordance with the collective bargaining agreement, Local 380 filed a grievance on Ramos' behalf. Local 380 handled the grievance through Step Three, at which time APWU took over and appealed the matter to arbitration. The grievance was heard by an arbitrator on February 1, 2001 and May 21 and 22, 2001, at which Steve Zamanakos, an elected officer of the APWU, represented Plaintiff. On July 24, 2001, the arbitrator issued his decision, finding in favor of APWU and, accordingly, ordered the Postal Service to return Plaintiff to work and to make him whole in terms of lost wages and other suspended benefits.

On August 1, 2001, Zamanakos wrote to Local 380 and Plaintiff, advising them of the arbitrator's decision. However, the Postal Service did not comply with the arbitration award and informed Plaintiff on August 21, 2001, that it was attempting to vacate the award. The Postal Service did not serve its complaint on the APWU until February 21, 2002, although it had filed it on October 25, 2001. Following the APWU's answer and counterclaim, the court ordered a settlement conference to take place in July, 2002. Prior to the settlement conference, the APWU and Plaintiff were in telephone contact every month and the APWU referred Plaintiff to APWU's counsel, with whom Plaintiff conferred.

The settlement conference did not resolve the matter, but the parties did reach a settlement agreement in principle. Zamanakos timely informed Plaintiff of the status of the agreement and arranged to contact Plaintiff when the decision became finalized.  On October 4, 2002, the Postal Service and APWU finalized their agreement that the Postal Service would comply fully with the arbitrator's award and reinstate Plaintiff, reimbursing him for lost wages and the loss of benefits. Zamanakos informed Plaintiff of the agreement on October 15, 2002. The grievance was considered closed.

On October 31, Plaintiff reported to work, whereupon he was asked, pursuant to the Postal Service Employee Relations Manual, to provide medical clearance certifying that he had fully recovered from the back injury from which he had suffered prior to his dismissal. Plaintiff did not have the necessary documentation and also informed his supervisor that he had new ailments and subsequent job restrictions including, *inter alia*, that he could not work around machinery because of a history of seizures and he could not work around dust because of a pulmonary condition.  Plaintiff was not permitted to work without medical documentation and was placed on paid leave.

Unhappy with his status regarding his employment, Plaintiff contacted Gene Gabaldon, the president of Local 380, who told Plaintiff that he had been reinstated and that his request for

accommodations for his new medical conditions was a new matter
that would have to be addressed separately from the prior
resolved grievance.  Gabaldon instructed Plaintiff to provide the
necessary medical documentation and request for "light duty" job
placement.

Plaintiff also called Zamanakos, telling him that the Postal
Service had refused to reinstate him.  Zamanakos called Gabaldon
and was apprised of the status of Plaintiff's employment.
Zamanakos then called Plaintiff to explain what Gabaldon had told
him about Plaintiff's reinstatement.  Plaintiff and Local 380 did
not have any further contact until December, when Plaintiff
requested that Gabaldon attend a meeting with Plaintiff with the
Postal Service Labor Relations Specialists Karen Wheeler[3] and
Jerry Garcia.  This meeting was to take place on December 11,
2002, but an altercation took place between Gabaldon and
Plaintiff regarding whether Plaintiff was attempting to tape
record the meeting, in contravention of union policy.  The
meeting ended abruptly.

Another meeting was convened on December 18, 2002, during
which the Postal Service and Plaintiff discussed the nature of
Plaintiff's health issues and job restrictions. Plaintiff
specifically rejected any representation by Local 380 or APWU.

_____

[3]In both APWU's and Plaintiff's Findings of Fact, reference is made to a
"Karen Wheeler."  In Defendant's Exhibit AA, however, a letter is addressed to
"Courtney Wheeler" of the Employment and Labor Law section of the United State
Postal Service.

Despite the Postal Service's search for an appropriate job placement, Plaintiff was not returned to work.

In late December 2002, Plaintiff contacted Gabaldon, who requested that Plaintiff provide him with the medical documentation and all other paperwork he had given to the Postal Service so that Gabaldon could begin the grievance procedure against the Postal Service. Although Plaintiff did not provide the requested documentation, Gabaldon filed a Step One grievance on January 6, 2003 over the failure of the Postal Service to provide Plaintiff with employment appropriate to Plaintiff's medical needs. On January 28, 2003, Plaintiff filed the instant lawsuit.

In addition to Plaintiff's failure to submit the necessary documentation regarding his medical condition, he also neglected to address properly the requirement that he submit specific forms in order to collect his back pay that had been included in the arbitration award. Garcia sent Plaintiff the forms in a letter dated November 4, 2002. Plaintiff later reported to Gabaldon that he had difficulty completing the forms. Gabaldon told Plaintiff he could not be of assistance because he did not know the requested information (i.e., where Plaintiff had sought employment). Plaintiff had no other contact with Local 380 about this issue.

Another meeting was scheduled for February 10, 2003, which

6

Plaintiff also refused to attend because he was told by the Postal Service that he could not bring his counsel; that he could only have union representation.  Plaintiff never contacted either Local 380 or APWU about this aborted meeting.

The Postal Service then directed Plaintiff to attend another meeting on February 18, 2003 regarding his failure to attend the February 10 meeting.  Plaintiff refused to attend this meeting and was thereby terminated for insubordination.  Plaintiff did not inform Local 380 about this matter until well after the fourteen day time period in which to file a grievance.

Despite this apparent rift in the communication between Plaintiff and Local 380 and AWPU, Gabaldon filed a Step Two grievance on Plaintiff's behalf on February 21, 2003 regarding Plaintiff's light-duty request.  Gabaldon pursued this to Step Three of the grievance procedure.  Despite the pending grievance, Plaintiff settled this case with the Postal Service on July 21, 2003.  Pursuant to the agreement, Plaintiff resigned from the Postal Service on July 21, 2003, the Postal Service agreed to pay him back pay for the period between November 27, 1998 through October 31, 2002 (the period between Plaintiff's first termination and his return to work), and he released the Postal Service from all claims and grievances.  Neither Plaintiff nor his counsel contacted either Local 380 or AWPU about this agreement.  Plaintiff knew about the grievance procedure that was

in process when he entered into this agreement with the Postal
Service.

## CONCLUSIONS OF LAW

An action claiming both a breach of a collective bargaining
agreement and a breach of the duty of fair representation is
known as a "hybrid" action pursuant to the LMRA.  In such an
action, the employee must prove: (1) some conduct by the worker's
union that breached the duty of fair representation; (2) a causal
connection showing that the union's breach affected the integrity
of the arbitration process; and (3) a violation of the collective
bargaining agreement by the company.  "Where the union actually
utilizes the grievance and arbitration procedures on behalf of
the employee, the focus is on whether, contrary to the
arbitrator's decision, the employer breached the contract and
whether there is substantial reason to believe that a union
breach of duty contributed to the erroneous outcome of the
contractual proceedings." Webb. v. ABF Freight System, Inc., 155
F.3d 1230, 1239 (10th Cir. 1998).  In the present case, Plaintiff
must make a showing that there was APWU involvement in the
grievance and arbitration procedure, a breach of the collective
bargaining agreement by the Postal Service, and evidence that
leads one reasonably to believe that APWU's breach of its duty of
fair representation contributed to the breach by the Postal

8

Service.

For the following reasons, this Court will find that Plaintiff's claims are unavailing.

## I.   Union's Breach of Duty of Fair Representation

Plaintiff asserts that the APWU did not fulfill its obligations to him. This, Plaintiff claims, is demonstrated by the failure of the APWU to utilize the grievance and arbitration proceedings delineated by the collective bargaining agreement. In order to prevail on his claim, Plaintiff must prove that APWU breached its duty of fair representation. A union breaches its duty of fair representation only if its conduct is arbitrary, discriminatory, in bad faith or perfunctory. Webb, 155 F.3d at 1240.

At all times, Local 380 and APWU adhered to the proper procedure regarding Plaintiff's claims. Local 380 began the grievance procedure regarding Plaintiff's wrongful termination by taking Step One of the process, and pursued the grievance through Step Two and Step Three. At that point, APWU assumed responsibility and successfully grieved the matter through arbitration. When the Postal Service refused to comply with the arbitrator's decision, APWU negotiated a settlement whereby Plaintiff was to return to work on October 31, 2002. Additionally, Local 380 filed a grievance regarding the light-

9

duty work issue.  Local 380 pursued this grievance to Step Three
and the grievance was still pending at the time of the settlement
between Plaintiff and the Postal Service.  Thus, the conduct of
the APWU and Local 380 cannot be deemed arbitrary,
discriminatory, in bad faith or perfunctory.  Plaintiff does not
allege facts that rise to the level of such conduct. APWU and
Local 380 vigorously and consistently campaigned in favor of
Plaintiff's rights and fought on behalf of Plaintiff through all
steps of the grievance procedure.

Furthermore, Plaintiff fails to recognize that he interfered
with APWU and Local 380's efforts on his behalf.  He did not give
the union the opportunity to respond to the Postal Service's
denial of his request for light duty work or with the completion
of his back pay forms.  He refused union representation and
refused to work with either Local 380 or APWU in the development
and pursuit of his grievances or any strategy thereof.  He failed
to inform either Local 380 or APWU about his settlement with the
Postal Service in July 2003.  "There can be no doubt that the
employee must afford the union the opportunity to act on his
behalf."  Republic Steele v. Maddox, 379 U.S. 650, 652-653
(1965).  Without that opportunity, Plaintiff cannot then claim
that the union breached its duty of fair representation.

Even if, arguendo, Local 380 had been in breach of its fair
duty of representation, APWU is not liable for any actions of its

local affiliate.  Local 380 is an autonomous entity.  It is not an agent of the APWU.  Until Step Three of the grievance procedure, when the APWU takes over, Local 380 acts within its own discretion.  The APWU was not involved in Local 380's handling of either its decision not to file a grievance regarding the issue of Plaintiff's back pay or its handling of the light-duty request at Steps One, Two or the appeal to Step Three.  The APWU did not authorize, ratify, encourage, or participate in the actions of Local 380 in those circumstances and is, therefore, not responsible for any possible misconduct related thereto. Carbon Fuel Co. v. United Mine Workers, 444 U.S. 212 (1979).

## II.  Causal Connection Between Breach and Arbitration Process

Plaintiff fails to demonstrate that either Local 380 or APWU has breached the duty of fair representation.  Therefore, there is no causal connection between a breach of the duty and the Postal Service's alleged breach of the collective bargaining agreement.

## III. Postal Service's Breach of the Collective Bargaining Agreement

Plaintiff claims that the Postal Service breached the collective bargaining agreement by failing to find him light-duty work. However, the Postal Service did search for appropriate employment; Plaintiff then refused to participate in the accommodation process undertaken on his behalf.  Additionally,

11

Plaintiff did not exhaust his contractual remedies concerning his request for light-duty work before he brought his suit against the APWU.  A hybrid cause of action does not accrue until the arbitration has been completed and a decision has been issued. Lucas v. Mountain States Tel. & Tel., 909 F.2d 419, 421 (10th Cir. 1990).  Plaintiff's claim has not yet accrued because there is a grievance pending arbitration concerning Plaintiff's light-duty request.

Plaintiff also claims that the Postal Service breached the collective bargaining agreement by not providing him back pay. Again, Plaintiff failed to cooperate with the Postal Service in that he refused to complete the forms necessary for such reimbursement. Once again, Plaintiff failed to exhaust fully his contractual remedies regarding this dispute because he failed to file a Step One grievance in response to the arbitration decision.  Accordingly, there was no breach on the part of the Postal Service.  Without a breach of the collective bargaining agreement by the Postal Service, Plaintiff fails to fulfill any of the prongs necessary to prevail on this hybrid action.

## CONCLUSION

For the foregoing reasons, the Court denies Plaintiff's claims and finds in favor of Defendant.

The clerk is instructed to close this case.

SO ORDERED this 2nd day of May, 2005.

_____
Warren W. Eginton,
Senior United States District Judge
Sitting by Designation

13